UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SCOTTSDALE INSURANCE COMPANY,

                                                              Plaintiff,

        -against-

LONG BEACH POLAR BEAR CLUB
CITY OF LONG BEACH,
TRAVIS GENTILE, as an interested party,
                                                           Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-CV-03026 (JMA) (AYS)

**AZRACK, United States District Judge:**

Before the Court are the cross-motions for summary judgment of Plaintiff Scottsdale Insurance Company ("Scottsdale" or "Plaintiff") and Defendants Long Beach Polar Bear Club ("Polar Beach Club") and the City of Long Beach ("Long Beach") (together, "Defendants"). The parties seek a judgment from this Court declaring whether Scottsdale needs to defend and indemnify Polar Beach Club and/or Long Beach in relation to an underlying civil action pending in the County of Nassau Supreme Court of the State of New York. Travis Gentile ("Mr. Gentile") is an interested party. For the reasons stated herein, Plaintiff's motion is GRANTED.

## I.    BACKGROUND

The Court provides a brief recitation of the relevant material facts as they pertain to the motions:[1]

Defendant Polar Bear Club, a New York-based not-for-profit, holds an annual charitable fundraising event known as the "Super Bowl Splash" or "Polar Bear Plunge" at Long Beach, New York. (Polar Bear Club's Rule 56.1 Statement ("PBC Stmt.") ¶¶ 1-3, ECF No. 33-11.) The event

---

[1] The Court assumes familiarity with the factual and procedural history of this case, and it provides a summary of that history only insofar as it is necessary to the resolution of the motions.

consists of "thousands of people" entering the ocean to raise funds for Make-A-Wish Foundation. (PBC Stmt. ¶¶ 3-5.) Polar Bear Club asks those who wish to participate to formally register online and submit a fully executed Hold Harmless Agreement either online or in-person at the event. (PBC Stmt. ¶ 4; "Hold Harmless Agreement," ECF No. 30-6.)

In advance of the event, Polar Bear Club applied for a "Permit for Use of City Property for Special Event." (PBC Stmt. ¶ 6.) The City of Long Beach required Polar Beach Club to acquire a commercial general liability insurance policy to cover the event and to name the City of Long Beach as an additional insured. (PBC Stmt. ¶ 7.) Polar Bear Club obtained a policy to this effect for the Polar Bear Plunge from Scottsdale for the time period February 2, 2020 to February 3, 2020 (the "Policy.") (PBC Stmt. ¶ 7.) The Polar Bear Club was the named insured on that Policy and the City of Long Beach was an additional insured on that Policy. (PBC Stmt. ¶ 7; see also ECF No. 30-13, Ex. E.)

The Policy included certain declarations, endorsements, and exclusions from coverage, including the "Special Event Participant Exclusion" which provided:

> THIS ENDORSEMENT CHANGES THE POLICY.
> PLEASE READ IT CAREFULLY.
>
> **SPECIAL EVENT PARTICIPANT EXCLUSION**
>
> This policy does not apply to "bodily injury," "property damage" or "personal and advertising injury" to any "participant" arising out of:
>
> 1. The practicing for or participation in any athletic event, contest, game, demonstration, exhibition, theatrical or musical performance, race or show covered by this policy; or
>
> 2. The use of any amusement device operated by you or on your behalf.
> For purposes of this endorsement, "participant" shall include performers, stagehands, volunteers, drivers, setup crew, pit-crew and other persons located in the pit area, security personnel, mechanics, stewards, officials or attendants, or any other person taking part in paragraphs 1. or 2. of this endorsement.

2

(PBC Stmt. ¶ 12; see also Special Event Participant Exclusion, ECF No. 31-4 at 38.)

On February 2, 2020, at the Polar Bear Plunge, Mr. Gentile joined others in entering the ocean at Long Beach, New York. (Scottsdale Stmt. ¶¶ 9-11.) Mr. Gentile alleges he suffered bodily injury as a result of his entering the ocean. (Id.; PBC Stmt. ¶ 7; PBC Response to Scottsdale Stmt., ECF No. 31-14 ¶ 11.) Mr. Gentile, however, had not completed a registration and had not executed the Hold Harmless Agreement. (PBC Stmt. ¶ 13.)

On or about February 22, 2020, Mr. Gentile, proceeding pro se, then served a Notice of Claim on Long Beach. (PBC Response to Scottsdale Stmt. ¶ 12, ECF No. 31-14.) In sum and substance, the Notice of Claim alleged that Long Beach was negligent in that it should have known based upon prior Polar Bear Plunges that the event was "dangerous, unorganized, and chaotic." (Compl. ¶ 18, ECF No. 1-1.)

On or about May 21, 2020, Long Beach tendered the Notice of Claim filed by Mr. Gentile to Scottsdale for defense and indemnification. (PBC Response to Scottsdale Stmt. ¶¶ 12-16.) By letter dated June 22, 2020, Scottsdale disclaimed coverage to Polar Bear Club and Long Beach, pursuant to the Special Event Participant Exclusion, and denied any duty to defend or indemnify the Defendants in connection with Mr. Gentile's Claim under the Policy. (PBC Response to Scottsdale Stmt. ¶¶ 12-16.)

Thereafter, on July 8, 2020, Scottsdale commenced this action for a declaratory judgment against Polar Bear Club and Long Beach in regard to Mr. Gentile's claim and lawsuit. (Complaint ("Compl."), ECF No. 1; PBC Response to Scottsdale Stmt. ¶ 17.) On August 10, 2020, Long Beach answered the Complaint and brought a Counterclaim seeking a declaratory judgment that it was entitled to insured status and stating that the Special Participant Exclusion is void against public policy. (Long Beach's Answer and Counterclaim, ECF No. 6.) On August 20, 2020,

3

Scottsdale filed its Reply to the City's Counterclaim. (ECF No. 8.) On October 26, 2020, Mr. Gentile served its Answer to Scottsdale's Complaint. (ECF No. 13.)

On January 13, 2021, Mr. Gentile commenced suit in state court against the City of Long Beach, Polar Bear Club and two of its founders Kevin McCarthy and Peter Meyers in connection with the Accident (the "Gentile action"). (PBC Response to Scottsdale Stmt. ¶ 18.) In his complaint, Mr. Gentile alleges that "[o]n February 2, 2020 Travis Gentile, participated in the Plunge and by doing so was caused to sustain and suffer injuries." (Id. at ¶ 19.) Defendants, and Mr. Gentile, the interested party, have answered and asserted counterclaims seeking a declaration that Scottsdale does owe defense and indemnity to its insureds in relation to the personal injury claim of Travis Gentile. (Long Beach's Rule 56.1 Statement ("Long Beach Stmt.") ¶ 3, ECF No. 30-13.)

## II. DISCUSSION

### A. Declaratory Judgment

A district court should render a declaratory judgment when such a judgment will (1) serve a useful purpose in clarifying and settling the legal relations in issue, and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005). See Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. "While there is a pending action in state court, a declaratory judgment in this case is still appropriate because it concerns Scottsdale's insurance coverage obligations, if any, and thus is distinct from the merits of the underlying action." Scottsdale Ins. Co. v. Freedom G.C. Inc., No. 19-CV-2597, 2021 WL 4480552, at *3 (E.D.N.Y. Sept. 30, 2021).

B. **Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"The same standard of review applies when the court is faced with cross-motions for summary judgment." Clear Channel Outdoor, Inc. v. City of New York, 2009 WL 857068, at *12 (S.D.N.Y. Mar.31, 2009) (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)). In evaluating cross-motions for summary judgment, "[e]ach party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration." Id. (citing Morales, 249 F.3d at 121). However, "even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." Morales, 249 F.3d at 121 (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.1993)).

5

C. **Principles of Contract Interpretation**

New York law treats an insurance policy as a contract and construes it in accordance with general contract principles.[2] Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010) "[T]he initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks omitted). "Whether the contract is unambiguous is a question of law for the court." Cont'l Ins. Co. v. Atl. Cas. Ins. Co. at 180.

"In determining a dispute over insurance coverage, we first look to the language of the policy. We construe the policy in a way that affords a fair meaning to all the language employed by the parties in the contract and leaves no provision without force and effect." Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 5 N.Y.3d 157, 162, 800 N.Y.S.2d 89, 833 N.E.2d 232 (2005). "[I]f an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 201 (2d Cir. 2010) (quoting Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F.3d 88, 90 (2d Cir. 2009)).

Of course, "an ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."

---

[2] The parties do not dispute that New York law applies.

6

Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)(internal citations and quotations omitted).

"The insured bears the burden of showing that an insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim." MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011) (quoting Morgan Stanley Grp., 225 F.3d at 276 & n. 1.) Doubts are resolved in favor of the insured. Id.

The Court begins with the threshold question of whether the Exclusion is ambiguous. See Morgan Stanley Grp. Inc., at 275 (2d Cir. 2000) ("Part of [the] threshold interpretation is the question of whether the terms of the insurance contract are ambiguous.")

In order to be "ambiguous," a policy must be reasonably interpreted in two conflicting manners when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement. Id. (internal quotations omitted). "Customs, practices, usages and terminology as generally understood in the particular trade or business" are included in this determination." Id.; see, also, (Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999) ("If the language of the insurance contract is unambiguous, we apply its terms. Where its terms are reasonably susceptible to more than one interpretation, the policy must be regarded as ambiguous.")

Plaintiff argues that the Exclusion is not ambiguous, because the intent of the Policy was to provide general liability coverage to "spectators" at the 2020 Super Bowl Splash, not individuals participating in the event. (Pl's Mem. at 4.) Scottsdale states that there are multiple state and federal court opinions that have scrutinized the Exclusion at issue and found it to be clear and unambiguous. (Pl's Mem. at 8.) Scottsdale also points to the existence of a separate "participant coverage policy" issued to Defendants by another insurance company for the 2020 Super Bowl

7

Splash.³ (Pl's Mem., Ex. C at 8, ECF No. 18-9; see also Polar Bear Club's Response to Pl's Rule 56.1 Statement, 31-14 ¶ 5.)

Defendants Polar Beach Club and Long Beach insist that the Exclusion is ambiguous, because it is unclear who is a "participant," under it, and, regardless, the Super Bowl Splash does not fall within the scope of the Policy's limitations. (See generally, Polar Bear Club's Memorandum of Law in Support of Summary Judgment ("PBC's Mem."), ECF No. 33-9; Long Beach's Memorandum of Law in Support of Summary Judgment ("Long Beach's Mem."), 30-14.)

Specifically, Defendants argue that only persons who formally registered for the Plunge and executed the Hold Harmless Agreement are "participants." (PBC's Mem. at 7-8; Long Beach's Mem.) Defendants contend that the Exclusion, as argued by Plaintiff, could easily be construed to apply to spectators watching participants entering the ocean. And, more generally, anyone attending the Polar Bear Plunge, from their perspective, is arguably a "volunteer," because they are supporting a charitable cause. (PBC's Opp'n at 6, ECF No. 33-10.) Defendants argue this broad construction is a "slippery slope" that renders coverage illusory. (Long Beach's Reply, ECF No. 30-16; see generally Defs' Mem.) The Court disagrees.

1. **The Policy is unambiguous.**

A reading of the entire Policy demonstrates that the Exclusion reflects the intent to provide coverage to spectators and attendees, not participants. The Policy's Extension of Supplemental Declarations clearly classifies the Polar Plunge as "Athletic Games (Sporting Events) – Not-For-Profit," and, in the same section, lists "Attendees" as the "Basis" for the stated insurance rate and

---

³ Because the Court finds that Exclusion to be unambiguous, it does not rely on Scottsdale's extrinsic evidence. Generally, "[t]he Court cannot consider extrinsic evidence unless it determines the relevant contractual provision is sufficiently ambiguous as to be susceptible of at least two fairly reasonable meanings." Wards Co., Inc. v. Stamford Ridgeway Assoc's, 761 F.2d 117, 120 (2d Cir. 1985); see, also, Morgan Stanley Group Inc., 225 F.3d at 275–76 (holding that a court may only consider extrinsic evidence if the language at issue is determined to be ambiguous)

8

premium. (ECF No. 1-2 at 11.) The plain and ordinary meaning of an "attendee" is simply a person who is present on a given occasion or at a given place. See Attendee, Merriam Webster's Collegiate Dictionary (11th ed. 2009.) The meaning of a "spectator" is indistinguishable. This understanding viewed in context with the Exclusion's broad contemplation of a "participant," or a person who is taking a more active role in an event, indicates that the only reasonable interpretation of the Policy is for individuals who attended as spectators or attendees.

Defendants' argument for a narrower definition encompassing only registered participants fails. Defendants cite no authority for displacing the definition outlined by the Exclusion for their preferred definition. The fact that they disagree with the broad definition afforded by the Exclusion is not a basis to render the Policy ambiguous. "A contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms." Cytec Indus. Inc. v. Allnex (Luxembourg) & Cy S.C.A., No. 14-CV-1561, 2017 WL 2634177, at *6 (S.D.N.Y. June 19, 2017) (citing Bank of New York Mellon v. WMC Mortgage, LLC, 136 A.D.3d 1, 9 (1st Dep't 2015)

Further Defendants' "slippery slope" argument disregards the rule that "the language of an insurance policy must be construed with reference to the risk, subject matter and purpose of the policy." Sea Ins. Co. v. Westchester Fire Ins. Co., 51 F.3d 22, 26 (2d Cir. 1995)(affirming that a court considers an exclusion within the context of the greater policy); see also Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 168 (2d Cir. 2005)("[W]e look to the entire contract to determine its purpose and effect and the apparent intent of the parties.)(internal quotations omitted).

Indeed, their view that anyone watching the Polar Bear Plunge participants could easily be deemed more than a "spectator," or that everyone attending the Plunge was a "volunteer" is a

9

reading of the Policy devoid of context and therefore inapplicable. (PBC's Opp'n. at 3, ECF No. 33-10.) The Policy clearly covers those who are not involved in the Polar Bear Plunge, should they suffer bodily injury, for example, as a result of a participant knocking them over on the boardwalk or on the beach. In that case, a spectator, or bystander, cannot be deemed to be "taking part" in the Plunge, any more than a college basketball fan watching March Madness would be "taking part" in that tournament of games. Defendants appear to conflate someone's attendance at an event as synonymous with having an assigned role and participating in the event. This is not the case. In any event, those are not the facts before the Court as Mr. Gentile's underlying claim is not encumbered by such ambiguity.

    **2. The Polar Plunge is An Athletic Event**

Having determined that the Policy is not ambiguous, the Court next considers whether the Special Event Participant Exclusion precludes Mr. Gentile's claim and lawsuit from the Policy's coverage.

The parties dispute whether the Polar Bear Plunge can be considered an "athletic event" for purposes of paragraph 1 of the Exclusion. Scottsdale notes that the Policy, itself, designated the 2020 Super Bowl Splash as an "Athletic Event (Sporting) Non-Profit." (ECF Nos. 1-3, 30-2.) Polar Bear Club and Long Beach dismiss this undisputed fact as irrelevant, because it is an "internal class description" and the event is no more than a "quick dip" in the ocean. (Long Beach's Mem. at 9, ECF No. 30-14.) But, again, the Defendants have cited no legal authority for discarding the Policy's plain language.

Even if the Court did not consider the policy designation, the nature of the event is one that puts athleticism on display front and center. Polar plunges typically consist of the blowing of a horn or whistle followed by thousands of participants, usually running, or racing in unison to jump

10

into the ocean, as was Polar Bear Club's 2020 event. (See, generally, 50-h Transcript, ECF No. 31-2.) It is clearly more than a "quick dip." Defendant's exhibit of their website explaining the history of the event even describes it as a "swim" multiple times. (ECF No. 30-12.) While no one might consider the Plunge to demand Olympic-level rigor, for all intents and purposes, it is an event of an athletic nature.

### 3. Mr. Gentile Was a Participant

It is also clear that Mr. Gentile was a participant within the scope of the Exclusion. Taking part, or participating, in the 2020 Super Bowl Splash consisted of gathering at Long Beach, New York, at the designated time, then entering in the ocean after a horn or whistle is blown. (Gentile Complaint at 15, ECF No. 30-2.) Mr. Gentile did just that. He arrived that day wearing a bathing suit, with family and friends, and upon hearing the sound of the horn, entered the water. (50-h Transcript at 7, ECF 31-2.) Specifically, he states that he "rushed into the water … at the sound of a horn." (Gentile's Mem. at 7, ECF 31-10; see also 50-h Transcript at 7, ECF 31-2.) Mr. Gentile's actions thus undeniably meet the criteria "participant" under the Exclusion, because the definition of a "participant" includes "any [] person taking part in" the "participation in any athletic event […]" and the 2020 Super Bowl Splash was the athletic event that Mr. Gentile participated in.

### 4. The Policy is Not Illusory

The Court does not find the Policy to be illusory. As discussed above, the Policy provides coverage for some acts and occurrences, namely, bodily injury of spectators and attendees of the Polar Bear Plunge. The fact that there may be "potentially wide exclusion[s]" does not render policy illusory under the law. Spandex House, Inc. v. Hartford Fire Ins. Co., 816 F. App'x 611, 616 (2d Cir. 2020) (citing Assoc. Cmty. Bancorp, Inc. v. St. Paul Mercury Ins. Co., 118 A.D.3d

11

608, 608, 989 N.Y.S.2d 15 (2014)); see also Scottsdale Ins. Co. v. Nat'l Wings & Armor Found., No. 3:17-CV-01407, 2019 WL 281284, at *3 (D. Or. Jan. 22, 2019) ("Because the Policy provides some coverage, even if not for participants, the Policy, interpreted in light of the [Special Event Participant] Exclusion, is not illusory.")

On the undisputed facts, Scottsdale Insurance Company has no duty to defend or indemnify Polar Bear Club or Long Beach in the underlying action based upon the applicability of the Special Event Participant Exclusion. Summary judgment on this issue is granted to Plaintiff.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is GRANTED.

**SO ORDERED.**

Dated: March 18, 2022
   Central Islip, New York

                                       /s/   (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE